UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CONNIE S. BREEDLOVE,

    Plaintiff,

vs.                                        CASE NO. 3:07-cv-1221-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

       This matter is before the Court on Plaintiff's complaint (Doc. #1), which seeks review of the final decision of the Commissioner of the Social Security (the Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #12, P's Brief). Defendant filed a brief in support of the decision to deny disability benefits (Doc. #13, D's Brief). The Commissioner has filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference entered March 25, 2008 (Doc. #11).

       The Court has reviewed the record and has given it due consideration in its entirety, including arguments presented by the parties in their briefs and materials provided in the transcript of the underlying proceedings. Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the Court in making its determinations. Accordingly, the Court has decided the matter on

the written record. For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

## PROCEDURAL HISTORY

Plaintiff Connie S. Breedlove filed an application for DIB on May 11, 2004, alleging disability beginning June 11, 2003 (Tr. 62-65). Plaintiff's application was denied initially and on reconsideration. Thereafter, Plaintiff requested a hearing, which was held on December 12, 2006 in Jacksonville, Florida before administrative law judge (ALJ) JoAnn L. Anderson (Tr. 445-86). Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Melissa T. Brooks. Plaintiff was represented during the underlying proceedings by non-attorney representatives Susan A. Butler and Gil Spruance (Tr. 26, 438).[1] In a decision dated April 20, 2007, the ALJ denied Plaintiff's application (Tr. 9-17). Plaintiff subsequently requested review of the hearing decision by the Appeals Council (AC), which was denied (Tr. 5-7). Thus, ALJ Anderson's decision became the final decision of the Commissioner. 20 C.F.R. § 404.955.[2] Plaintiff's current counsel of record, Mr. L. Jack Gibney, Esq., timely filed the instant action in federal court on December 28, 2007 (Doc. #1).

## STANDARD OF REVIEW

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically

---

[1]Although the transcript record of the December 12, 2006 hearing identifies Ms. Susan Butler as an attorney for the claimant (Tr. 445, 447), Ms. Butler indicated she was not an attorney in the fee agreement between herself and Plaintiff and when filing Plaintiffs' request for review of the hearing decision (*see* Tr. 26, 438). Ms. Butler and Ms. Spruance are representatives of Spruance & Associates, Inc., a Disability Management Company (*see, e.g.*, Tr. 26-28, 439).

[2]All references made to 20 C.F.R. will be to the 2008 edition unless otherwise specified.

determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505.

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). A plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla, but less than a preponderance. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)). The evidence must do more than merely create a suspicion of the existence of a fact; it must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Id*.

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole,

taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human S*erv's., 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that a plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, a plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) (no person shall be considered to be under a disability unless he or she furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require).  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove he or she suffers from disabling physical or mental functional limitations.  20 C.F.R. § 404.704.

**ANALYSIS AND BACKGROUND FACTS**

Plaintiff Connie S. Breedlove was born on November 17, 1954 (Tr. 62).  At the time of the ALJ's decision Plaintiff was fifty-two years old (Tr. 62).  Plaintiff is a high school

graduate and has past relevant work experience as a material cutter for a boat builder and as a supervisor and dye technician at a cotton mill (Tr. 89, 94, 105). In her Disability Report-Adult dated May 10, 2004, Plaintiff alleged she was unable to work due to severe back problems and tuberculosis (Tr. 88). In the Disability Report-Appeal that Plaintiff completed on February 27, 2005, Plaintiff reported she had experienced changes in her condition since the prior report in that her back pain and mobility had worsened and she had more difficulty "getting from sitting, laying position and walking" (Tr. 144).

Plaintiff raises two issues on appeal. First, Plaintiff claims the ALJ erred in assigning little weight to the opinion of Plaintiff's primary care physician, Dr. John Gaines, M.D. (P's Brief at 5-10). Second, Plaintiff claims the ALJ failed to "give a reasoned analysis" as to Plaintiff's credibility regarding her symptoms of pain (P's Brief at 10-11). Defendant asserts the Commissioner's decision is supported by substantial evidence, stating the weighing of evidence is a function of the fact-finder and not of the district court (D's Brief at 4, 6). Defendant more specifically asserts the ALJ correctly considered Plaintiff's subjective complaints under the relevant law and the ALJ properly discounted the limitations Dr. Gaines described for Plaintiff (D's Brief at 4-7). Here, the Court agrees the ALJ had good cause to discount the medical opinion of Dr. Gaines and the ALJ adequately articulated her credibility finding as to Plaintiff's subjective complaints of pain.

### *Treating Physician Statements*

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity

of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d at 583. Further, the Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is not bolstered by the evidence, is contrary to the evidence, or when the treating physician's opinion is inconsistent with his or her own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). If an ALJ elects to *disregard* the medical opinion of a treating physician, then he or she must clearly articulate the reasons for so doing. *Id.* (emphasis added).

The ALJ in this case did not reject Dr. Gaines diagnosis or treatment, nor did the ALJ disregard Dr. Gaines' medical opinion of Plaintiff's condition, but she did give little weight to Dr. Gaines' opinion as stated in the Physical Capacities Evaluation form completed on November 16, 2006 (Tr. 433-37). Dr. Gaines checked off boxes on this form that reflect his opinion Plaintiff could not carry more than 10 pounds occasionally or frequently, and could stand less than two hours in an eight-hour workday, had limitation of pushing or pulling in lower extremities, and might need to lie down during a work shift (Tr. 436). He further responded "yes" to the question, "Are these restrictions permanent? If not, how long are they likely to be required?" (Tr. 436). He checked off the response "no" to the question, "Is your patient able to perform sedentary work activities on a regular and continuing basis ([i.e.], 8 hours per day, 5 days per week, or the equivalent work

6

schedule)." *Id*. Dr. Gaines estimated Plaintiff might miss "4-5 or more days" a month from work (Tr. 437).

In her decision to give little weight to Dr. Gaines opinion, the ALJ found objective findings and other clinical evidence from expert medical sources did not support the limitations Dr. Gaines described, nor did Dr. Gaines himself provide findings to support this assessment (Tr. 16, 158-93). In fact, the ALJ determined Dr. Gaines' treatment records provided little clinical data and no objective findings to support this doctor's medical source statement (Tr. 16).

It appears from the record that Dr. Gaines treated Plaintiff in some capacity from June 4, 2001 (when Plaintiff called the office with complaints of swelling in legs, feet and hands) (Tr. 183) to March 7, 2006 (when Dr. Gaines wrote a prescription for Lorazepam .5mg to be taken ½ tablet up to 4 times per day as needed) (Tr. 413). However, Dr. Gaines treatment records reflect treatment for routine ailments, check-ups, a bout of pneumonia, and complaints of back pain (Tr. 158-93, 413-27). Dr. Gaines prescribed medications for Plaintiff's pain, referred her to specialists who were unable to resolve the issue, and ordered repeated testing that did not reveal a physiological cause for Plaintiff's complaints of back pain. *Id*.

Dr. Gaines referred Plaintiff for magnetic imaging (MRI) of her lumbar spine on June 11, 2003 (Tr. 187). Dr. Brent Brandon, radiologist, found some borderline narrowing of the L4/L5 intervertebral disc space, without evidence of a herniated nucleus pulposus (HNP) (Tr. 187). In August 2003, a lumbar myelogram CT scan showed a mild diffuse annular disc bulge with minimal central spinal stenosis, indicating degenerative disc disease.

7

However, there was no neural foraminal narrowing and no nerve root deviation, cut-off or swelling (Tr. 185).

Dr. Gaines wrote a note excusing Plaintiff from work beginning on June 16, 2003, to July 5, 2003 and on July 2, 2003 extended it until July 14, 2003 (Tr. 171). He prescribed medications (OxyContin, Bextra, and Percocet) and referred her to a neurosurgeon, Dr. Eric Gabriel, M.D., (Tr. 170). She continued to complain about back pain in visits on July 22, 2003 (Tr. 169) and October 29, 2003 (Tr. 167). At the later visit, Plaintiff stated she thought she was capable of working (Tr. 167).

Dr. Gabriel saw Plaintiff for a neurosurgical consultation on July 10, 2003 (Tr. 308). She complained of pain in the low back radiating into her right leg, with numbness and weakness in the right leg (Tr. 308). He noted the present treatment was with anti-inflammatory medication, pain medication and muscle relaxers, while staying off work (Tr. 308). On exam, her straight leg raise was 70 with pain in the right leg, and 90 without pain in the left, and her muscle strength in the right leg was 4/5 while 5/5 in the left leg (Tr. 304). Dr. Gabriel noted the MRI scan showed degenerative changes in the lumbar spine, but no specific nerve root compression (Tr. 304). The doctor noted he did not recommend surgery at that time, but would try physical therapy. He said Plaintiff was not disabled, but also not able to resume work (Tr. 305), and issued a work status excuse letter in accordance until August 15, 2003 (Tr. 299). He later extended that until August 30, 2003 (Tr. 297).

Dr. Gabriel saw Plaintiff on August 18, 2003 and advised continuing physical therapy, plus he ordered a lumbar CT myelogram to rule out nerve root compression (Tr. 296). In a return visit on September 4, 2003, Dr. Gabriel noted the myelogram did not demonstrate any nerve root compression, although there was evidence of degenerative

spondylolisthesis of L4/L5 of approximately 4-5 mm (Tr. 295). He again stated he did not recommend surgery and had no explanation for right leg pain other than radiculopathy (Tr. 295). He indicated he would consider an electrodiagnostic study to rule out radiculopathy (Tr. 295).

On March 24, 2004, Plaintiff advised Dr. Gaines that she had received a settlement, presumably in her worker's compensation case, and a lawyer had told her she would never work again (Tr. 165). The report states "I agreed," but it is not clear if that notation is the doctor quoting Plaintiff, or recording his agreement with Plaintiff's statement of what the lawyer said (Tr. 165).

Dr. Robert A. Greenberg, a pulmonary disease specialist, saw Plaintiff for a consulting examination on July 30, 2004, and noted decreased range of motion in the lumbar spine and both hips, positive right leg raise at 15 degrees, a slow gait (Tr. 356). He found no motor, sensory or reflex abnormalities and that Plaintiff's grip strength and fine manipulation were normal (Tr. 356). Dr. Greenberg also recorded his impression of "shortness of breath, probably secondary to cigarette smoking, suggest spirometry" (Tr. 356). Dr. Greenberg saw Plaintiff again on February 9, 2005, and made similar findings except that there was a positive left leg raise at 30 degrees (Tr. 334).

Another lumbar CT was taken on October 24, 2004 under orders from Dr. Gaines (Tr. 160). Dr. Preston R. Lotz, concluded it showed minor degenerative changes at L3/L4, and L4/L5, but no source of a right lumbar radiculopathy (Tr. 161). At L4/L5 the disc bulges around the left lateral aspect and the top of the left lateral recess was beginning to narrow slightly, but the doctor stated it was not a "very impressive finding." (Tr. 160.) The doctor

noted the Plaintiff's complaints were more right sided and the facet joints are normally preserved and the right foramen was wide open (Tr. 160).

Plaintiff complained to Dr. Gaines on October 28, 2004, that the pain had gotten worse, including sciatic pain, had gotten worse (Tr. 159). On December 6, 2004, she advised Dr. Gaines she had pain radiating down right leg and muscle spasms in back (Tr. 158). Dr. Gaines again referred to Dr. Gabriel (Tr. 158).

Dr. Gabriel saw Plaintiff again on January 18, 2005, after obtaining a repeat CT scan. The scan showed lumbar degenerative spondylosis, but no signs of nerve root compression that could account for her pain (Tr. 412). He suggested Plaintiff should follow up with her pain management physician for better pain-control management (Tr. 412).

In October 2005, Dr. Gaines noted Plaintiff reported no improvement (Tr. 424) and perhaps the pain was worse (Tr. 423) during two visits. Dr. Gaines noted Plaintiff was taking Panlor SS, Avinza and Lidoderm Patch for pain, Cymbalta for depression, Lunesta for sleeping, Lorazepam for anxiety, and Singulair for breathing (Tr. 422).

Plaintiff continued to report worse pain on January 16, 2006 (Tr. 420). An x-ray three days later showed minimal degenerative change in the lumbar spine, with osteophytic spurring most prominent at L3/L4 on the left and no evidence of spondylosis (Tr. 419). Disc spaces were preserved (Tr. 419).

Dr. David Guttman, M.D., completed a physical residual functional capacity (RFC) assessment on August 10, 2004 based on the medical evidence of record (Tr. 361-369). He concluded Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and sit and stand each up to six hours in an eight-hour workday, with no restrictions on pushing and pulling (Tr. 362) or manipulation (Tr. 364).

Dr. Thomas S. Edwards, M.D., also completed a physical RFC assessment on February 15, 2005 (Tr. 403-411) reaching similar conclusions to Dr. Guttman. He noted Plaintiff's grip strength and manipulation was good and she had a full range of motion in all joints except lumbar (Tr. 404). Dr. Edwards noted the symptoms were attributable to a medically determinable injury, but that the severity may be exaggerated (Tr. 408).

The Court notes Plaintiff's complaints of pain were consistent, but the clinical findings simply do not support the level of pain suggested. Dr. Gabriel could not find neurological signs to account for Plaintiff's stated pain and suggested only referral to a pain management specialist, finding surgery was not an option likely to produce any relief. While Dr. Gaines' records of Plaintiff's treatment and testing clearly present a longitudinal picture of an ongoing treating relationship, the clinical results of tests he ordered and the treatment records of pain management he prescribed simply do not support the levels of limitations he reported on the Physical Capacities Evaluation form. Thus, the Court finds ALJ Anderson had good cause to discount the opinion of Plaintiff's treating physician as it was not bolstered by the evidence of record and, in fact, was inconsistent with his own treatment records.

### ***Plaintiff's Credibility on Complaints of Pain***

Here, Plaintiff claims the ALJ did not evaluate her statements of pain in accordance with the prevailing law of this circuit (P's Brief at 10-11). Plaintiff correctly cites to the case of *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991) as the precedent the ALJ must follow in determining the credibility of her subjective statements of her condition. Where the ALJ decides not to credit a plaintiff's testimony about an asserted condition, the ALJ must articulate specific and adequate reasons based on substantial evidence for so doing, or the

decision must be obvious as to the credibility finding. *Holt v. Sullivan*, 921 F.2d at 1223; *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). Under *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995), if proof of disability is based upon subjective evidence and a credibility determination is critical to the decision, the ALJ must articulate adequate reasons for rejecting allegations of pain. In this case, the ALJ determined that Plaintiff's testimony concerning her subjective complaints of pain was "not entirely credible" (Tr. 16).

Plaintiff testified she was unable to work because of everyday pains in her neck and shoulders and also her lower back (Tr. 459-60). She stated the neck pain would be 7 or 8 on a 10-point scale without medication, and goes down to 4 or 5 with medication (Tr. 460). Plaintiff also stated she cannot turn her head sharply (Tr. 460) and can only remain in a fixed position, such as watching television, for 25 to 30 minutes (Tr. 461). Plaintiff said that two or three times a day, the pain will radiate down her right arm (Tr. 461), limiting what she can do with her hand (Tr. 462).

Plaintiff said her low back pain is sharper, and extends into her hip and legs (Tr. 462). Even with medication, she stated, the low back pain remains a 7 or 8 (Tr. 463). She obtains some comfort by laying down, sitting in a recliner, or standing and walking (Tr. 463). Plaintiff estimated she could sit in a desk type chair only 20 to 30 minutes, then would have stand up and move around (Tr. 464). She said she could walk only 50 to 70 feet (Tr. 466).

Plaintiff asserted she does not go out often, except shopping with her husband and son (Tr. 468). She stated she uses a riding cart in the grocery store (Tr. 466) and can only stand 5 to 7 minutes in a line (Tr. 466). Plaintiff stated she cannot stoop or bend well, and

if she drops something she waits for her husband or son to pick it up (Tr. 466). Plaintiff estimated she could only lift about five pounds (Tr. 466).

As to her household activities, Plaintiff testified she prepares meals, sometimes standing for an hour or hour and a half, and tries to load the dishwasher (Tr. 467). She does some laundry (Tr. 469). She works on crafts and putting old pictures in photo albums (471-72). She drives short distances to the store (Tr. 472).

Plaintiff also testified she takes Ambien and Pamelor for pain, but has to lie down within a short time as she becomes sleepy (Tr. 467). She also takes medication for depression (Tr. 468) and she takes a sleeping pill (Tr. 469).

Plaintiff claims she has constant muscle spasm in her back and occasional spasms in her neck (Tr. 470). Plaintiff also complained of occasional shortness of breath, but acknowledged she still smoked cigarettes (Tr. 470). She claims she isn't able to concentrate or focus on television and doesn't like to read (Tr. 475). She identified her doctors as Dr. Gaines and Dr. Gabriel (Tr. 470-71) and also had a foot specialist for a recent surgery (Tr. 471).

The ALJ's decision shows thorough consideration of Plaintiff's testimony (Tr. 15-16) and of the overall evidence in the record (*see* Tr. 14-17). In evaluating the credibility of Plaintiff's testimony, ALJ Anderson found, "After considering the evidence of record, the undersigned finds the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (Tr. 16.)

13

Under the Eleventh Circuit pain standard, a claimant must provide evidence of an underlying medical condition and must produce objective medical evidence confirming the severity of the alleged pain or evidence that the determined medical condition is of the severity which can reasonably be expected to give rise to the degree of pain or symptoms alleged. *See Holt v. Sullivan*, 921 F.2d at 1223. In 20 C.F.R. § 404.1529, the Regulations provide that a claimant's statements about pain or other symptoms will not alone establish disability. Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged. "Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques... *must be considered* in reaching a conclusion as to whether the individual is under a disability." 42 U.S.C. § 423(d)(5)(A) (emphasis added).

When making a credibility determination, the decision maker's opinion must indicate an appropriate consideration of the evidence. *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) (internal citation omitted). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote v. Chater*, 67 F.3d at 1561-62; *see also* 42 U.S.C. § 405(g) (the findings of the Commissioner as to any fact are conclusive if supported by substantial evidence).

As support for this credibility determination, the ALJ refers to the findings of the objective medical evidence consisting of the numerous CT scans and x-rays that demonstrate only "mild lumbar degenerative disc disease with no evidence of rood compression and mild degenerative joint disease in the pelvis" (Tr. 16). In determining Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms

were not entirely credible, the ALJ also points to the facts Plaintiff has not sought treatment beyond the medications prescribed by her treating physicians and Plaintiff's treating physicians have not suggested other more aggressive treatment might help. *Id.* Further, the Court notes the assessed RFC is supported by the findings of the reviewing medical consultants, one of whom indicated from his review of the record as it stood on February 15, 2005, that severity of symptoms may be exaggerated (Tr. 408; *also see* Tr. 403-10, 351-69).

Contrary to Plaintiff's suggestion, the ALJ did provide the basis for the Court to determine whether or not the pain criteria was used and properly applied. ALJ Anderson's findings are reflective of the prevailing law in this circuit and the applicable Regulations. In the instant case, the ALJ discussed the medical evidence of record and Plaintiff's subjective testimony, including her descriptions of daily activities (*see* Tr. 15-16). While an ALJ must consider a plaintiff's subjective testimony of pain that restricts his/her ability to work, the ALJ may reject the testimony as not credible and such a determination will be reviewed under the substantial evidence standard. *Marbury v. Sullivan*, 957 F.2d at 839.

A careful reading of the ALJ's decision reveals the ALJ considered all the record evidence and substantial evidence supports the ALJ's determination that Plaintiff's testimony was not entirely credible. The ALJ, as fact-finder, when questioning Plaintiff face-to-face, found she was not fully credible.

Having concluded that she had to make a credibility determination of Plaintiff's subjective complaints, the ALJ recognized that she had to articulate a reasonable basis for her determination and did so. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989).

The ALJ's finding that Plaintiff's testimony and subjective statements concerning her pain were not fully credible, is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the undersigned finds the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence. The Commissioner's decision is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this Order and Opinion and, thereafter, to close the file. Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 31st day of March, 2009.

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to all counsel of record
and *pro se* parties, if any